IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OMAR RAMIREZ | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 12-cv-1197-MJR-SCW |
| MAGID FAHIM and | ) |
| WEXFORD HEALTH SERVICES, INC. | ) |
| | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### INTRODUCTION AND PROCEDURAL HISTORY

*Pro se* Plaintiff Omar Ramirez brought this action pursuant to 42 U.S.C. § 1983 for purported violations of his constitutional rights at Illinois' Menard Correctional Center. (Doc. 1). Specifically, Plaintiff has alleged that Dr. Magid Fahim ("Fahim," a physician at Menard) and Wexford Health Services (the health care contractor at Menard) acted with deliberate indifference to his knee pain, thereby violating the Eighth Amendment. (Doc. 1). Upon threshold review, the undersigned rejected Plaintiff's attempt to state a medical negligence claim due to his failure to submit an affidavit (pursuant to 735 ILCS 5/2-622(a)). (Doc. 6). No affidavit was ever filed, so the case proceeded only under a theory of deliberate indifference against two Defendants.

1

The case comes before the Court on Defendants' Motion for Summary Judgment (Doc. 49), which ripened upon Plaintiff's Response in Opposition (Doc. 53). For the following reasons, the Court **GRANTS** the Motion for Summary Judgment. (Doc. 49).

SUMMARY JUDGMENT STANDARD

Summary judgment—which is governed by Federal Rule of Procedure 56—is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56). The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings"). A mere scintilla of evidence supporting the non-movant's position is insufficient to overcome summary judgment; a non-movant will prevail only when it presents definite, competent evidence to rebut the motion. *Estate of Escobedo v. Martin*, 702 F.3d 388, 403 (7th

Cir. 2012); *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012). Summary judgment is only appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Carlisle v. Deere & Co.*, 576 F.3d 649, 653 (7th Cir. 2009).

The Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court considers the facts in a light most favorable to the non-movant—here, Plaintiff. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

### FACTUAL BACKGROUND

Plaintiff is currently incarcerated at Menard Correctional Center. (Pl.'s Dep. p. 3). At the time of his deposition, he had been housed at that institution for approximately nine years. (Pl.'s Dep. p. 3). At some point during 2004, Plaintiff was incarcerated at Stateville Correctional Center. (Pl.'s Dep. p. 3). One day, while playing basketball, Plaintiff injured his left knee. (Pl.'s Dep. p. 3). Plaintiff was preparing to take a jump shot, when something in his left knee "went inside" and prevented him from stretching the joint. (Pl.'s Dep. p. 4). Plaintiff was taken to the health care unit and received conservative treatment, including ice and ibuprofen. (Pl.'s Dep. p. 4). Plaintiff was seen a couple more times for his knee while at Stateville; ultimately he spent about a month on crutches. (Pl.'s Dep. p. 4).

After eight months at Stateville, the IDOC transferred Plaintiff to Pontiac Correctional Center. (Pl.'s Dep. p. 5). There, his knee began buckling and making clicking noises. (Pl.'s Dep. p. 5). Plaintiff sought treatment for his knee at Pontiac, and estimates that he received treatment four to five times. (Pl.'s Dep. p. 5). Plaintiff believes someone at Pontiac told him that he had a meniscus tear. (Pl.'s Dep. p. 7).

Upon transferring to Menard on or around March 17, 2005, Plaintiff informed the medical staff that his knee buckled at times. (Pl.'s Dep. p. 5). Plaintiff deponed that at the time he arrived at Menard, he could jog and play basketball "a little bit." (Pl.'s Dep. p. 6). Starting in 2005, Plaintiff saw Dr. Feinerman several times for his knee pain; Dr. Feinerman performed certain tests and treated Plaintiff's knee conservatively. (Pl.'s Dep. pp. 6-7). A nurse practitioner gave Plaintiff knee exercises. (Pl.'s Dep. p. 7).

Plaintiff sought treatment for his knee again on November 29, 2009. (Pl.'s Dep. p. 8). He saw Nurse Pollion on December 1, 2009, and she referred Plaintiff to the physician. (Pl.'s Dep. p. 8). Dr. Platt evaluated Plaintiff on January 27, 2010. (Doc. 50-2, p. 1). He noted Plaintiff's history of a knee injury while playing basketball at Stateville. (Doc. 50-2, p. 1). Platt conducted a bilateral knee exam. He noted a click on extension in the left knee. (Doc. 50-2, p. 1). He also found that the ligament was stable. (Doc. 50-2, p. 1). He noted no effusion (i.e., fluid in or around the knee joint) at that time. (Doc. 50-2, p. 1). Platt ordered X-rays. (Doc. 50-2, p. 1).

Dr. Yousef took X-rays of Plaintiff's knee on February 12, 2010. (Doc. 50-2, p. 2). He noted mild osteoarthritis in both knees and joint effusion or swelling. (Doc. 50-2, p. 2). Yousef also noted that Plaintiff's last x-ray in 2005 also showed joint effusion, and mentioned in his report that Plaintiff may have a chronic problem. (Doc. 50-2, p. 2).

On March 1, 2010, Plaintiff saw Fahim, the Defendant in this case, for the first time. (Doc. 50-2, p. 3). Fahim found no effusion, and noted that Plaintiff reported that his knee was better. (Doc. 50-2, p. 3). He also noted that Plaintiff had a possible medial meniscus injury, but that the left knee was in normal exam range. (Doc. 50-2, p. 3). Fahim did patient teaching on the proper exercises to strengthen his knee and scheduled Plaintiff for a follow-up. (Doc. 50-2, p. 3).

Plaintiff saw Dr. Nwaobasi on April 8, 2010 for a finger injury. (Doc. 50-2, p. 4). The medical record reflects that Plaintiff told Nwaobasi that he was playing basketball at the time of his injury. (Doc. 50-2, p. 4). Plaintiff testified to the contrary: that he was not actually playing basketball; he was watching the game and attempted to throw the ball back when he injured his hand. (Pl.'s Dep. p. 10). The record is silent as to just how an attempt to throw a basketball caused a finger injury.

Plaintiff saw Nwaobasi again on August 12, 2010. (Doc. 50-2, p. 5). On that visit, Nwaobasi noted instability in the left knee with crepitus (joint sounds) and re-alignment of the left knee. (Doc. 50-2, p. 5). Nwaobasi referred Plaintiff to Fahim for possible further tests and gave him a knee brace. (Doc. 50-2, p. 5).

Fahim saw Plaintiff on September 9, 2010. (Doc. 50-2, p. 6). He examined Plaintiff's knee and found that it was negative for ACL and PCL damage. (Doc. 50-2, p. 6). He also noted the knee was stable when he conducted the exam. (Doc. 50-2, p. 6). Fahim ordered another X-ray and made a note to follow up with the X-ray results. (Doc. 50-2, p. 6).

Dr. Cordoba took X-rays of Plaintiff's knees two weeks later. He noted mild degenerative changes in both knees. (Doc. 50-2, p. 7). He also found "corticated bony densities along the anterior tibia which may be that of unfused accessory ossifications." (Doc. 50-2, p. 7). Cordoba did not find acute bony abnormalities. (Doc. 50-2, p. 7). (Fahim reviewed this chart on October 6. (Doc. 50-2, p. 7)).

Fahim examined Plaintiff again on September 30, 2010. (Doc. 50-2, p. 8). He noted that bilaterally, the knees were stable, but that there was knee locking and a mobile body sensation in the lateral aspect of the left knee. (Doc. 50-2, p. 8). He concluded that there was a possible abnormal left knee, but also noted that Plaintiff's gait was normal. (Doc. 50-2, p. 8).

Fahim saw Plaintiff again on October 8, 2010. (Doc. 50-2, p. 9). He noted that the left knee was stable, but that there were continuous popping noises in the left knee and that it was slightly dislocated. (Doc. 50-2, p. 9). Fahim's plan was to present Plaintiff to the "collegial"—a review process where several doctors consult on a patient's treatment options—for a possible referral to an orthopedist. (Doc. 50-2, p. 9).

Fahim presented Plaintiff's case at the collegial on October 14, 2010. (Doc. 50-2, p. 10). Fahim's request to refer Plaintiff for an orthopedic evaluation was denied. (Doc. 50-2, p. 10). Instead, the Director recommended a trial of bilateral knee strengthening exercises and NSAIDs (non-steroidal anti-inflammatories) for breakthrough pain. (Doc. 50-2, p. 10). Fahim also scheduled a follow-up visit in his call line in two weeks. (Doc. 50-2, p. 10) (Doc. 52). Fahim ultimately did not examine Plaintiff again. (Pl.'s Dep. p. 11).

Plaintiff attempted to go jogging on November 28, 2011, but his right knee gave out during the jog. (Pl.'s Dep. p. 11). Plaintiff also testified that he takes ibuprofen for his pain and that it helps him for several hours at a time. (Pl's Dep. p. 9).

## ANALYSIS

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011), (*citing Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). The first prong is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the *Eighth Amendment* requires "deliberate indifference to a *substantial* risk of *serious* harm.") (internal quotation marks omitted) (emphasis added). Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, 414 F.3d at 653. The plaintiff need not show the defendant literally ignored his complaint, just that the defendant was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Deliberate indifference is not negligence; rather it is akin to intentional wrongdoing. *McGee v. Adams*, 721 F.3d 474, 480

(7th Cir. 2013) (citing *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006)). The standard is criminal recklessness, and even gross negligence will suffice. *Id.* at 481.

### 1. *Dr. Fahim — No Deliberate Indifference*

On this record, a reasonable jury could not conclude that Fahim was deliberately indifferent. Plaintiff has pled that his knee causes him pain and Defendants do not dispute that Plaintiff suffers from a serious medical need. But the evidence does not support a conclusion that Fahim consciously disregarded a risk to Plaintiff's health.

On the contrary, Fahim saw Plaintiff on four occasions. On each occasion, Fahim conducted an examination of Plaintiff's knee. He performed various tests to assess swelling, stability, and ligament tears. Fahim undertook to treat Plaintiff on each of these occasions as well. He taught Plaintiff strengthening exercises, referred him for X-rays, and scheduled follow-up visits. He requested an orthopedic referral on Plaintiff's behalf. That the request was turned down cannot be attributed to Fahim. In short, the record reflects evidence from which a reasonable jury could conclude that Fahim took Plaintiff's injury seriously, ordered more tests to evaluate it, and personally evaluated the injury himself. Another doctor had already given Plaintiff a knee brace and Plaintiff conceded that Ibuprofen, which he had access to, controlled his pain. It is not clear what else Fahim could have done to address Plaintiff's injury, which was quite old at the time Fahim undertook to treat him.

Likewise, Fahim submitted an affidavit that he was not in charge of scheduling and would not take steps to schedule Plaintiff for an appointment besides making a note that he wanted to see him. Plaintiff has not contradicted this evidence. While it is unfortunate that Plaintiff missed his follow-up with Fahim, Fahim cannot be held liable on that point.

Plaintiff argues that Fahim was not medically qualified to make any decisions about his knee because his medical background is in surgery and anesthesia. Plaintiff misstates Fahim's affidavit, which notes that his residencies were in surgery and anesthesia. (Doc. 50-3, p. 1). That is not evidence that Fahim is not qualified as a general practitioner. There is also no evidence that Fahim ever held himself out as an orthopedist. Instead the record shows that he thought a referral to an orthopedist would be advisable. Other Wexford doctors disagreed with Fahim and denied the request for the referral. There is no evidence in Fahim's qualifications that would suggest he (or anyone else) it was deliberately indifferent via an undertaking to treat Plaintiff. On this record, no reasonable jury could find that Fahim was deliberately indifferent to Plaintiff's left knee pain.

### C. Wexford Health Services — No Corporate Liability

A private corporation cannot be held liable for a constitutional violation unless the violation was caused by a written policy, practice or custom of the corporation. *Shields v. Illinois Dep't of Corrs.*, 746 F.3d 782 (7th Cir. 2014). There is no *respondeat superior* liability under § 1983. *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). A series of bad acts on behalf of the corporate

defendant may raise an inference of such a policy. *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Additionally, the policy or custom actually has to cause the constitutional violation. *Id.* at 928.

As an initial matter, Plaintiff argues here, as he did in his Complaint, that Wexford and Fahim conspired together to commit deliberate indifference. The threshold order overlooked this language, and did not construe Plaintiff's claim as one for conspiracy. But to the extent that Plaintiff's Complaint stated conspiracy claims between Fahim and Wexford, those claims would fail as a matter of a law. Typically, members of the same entity cannot who are working for that entity's interest cannot be sued under a theory of conspiracy. *See Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999); *Wright v. Illinois Department of Children and Family Serv.*, 40 F.3d 1492, 1508 (7th Cir. 1994); *Johnson v. Shemonic*, No. 10-71-GPM, 2010 WL 3894019 (S.D. Ill. Sept. 30, 2010). Therefore, Wexford cannot be liable for conspiring with Fahim because Fahim was their employee.

Plaintiff further argues that Wexford was deliberately indifferent because their employee, Fahim, was "untrained and unqualified" to assess Plaintiff's orthopedic issue. As discussed above, Plaintiff has not submitted any evidence that Fahim is untrained and unqualified, other than his own opinion that Fahim's residencies in surgery and anesthesia make Fahim unqualified. Even if this were true, Plaintiff has not submitted any evidence that Fahim did not submit Plaintiff's case to the collegial review board to get approval to send him to an orthopedic

11

specialist. Fahim attempted to get a more expert opinion. Wexford was not deliberately indifferent when it employed Fahim as a medical director.

A *Monell* claim (under which § 1983 liability can attach to municipalities or, rarely, corporations) typically requires evidence of either an unconstitutional written policy or an unofficial policy or custom. Plaintiff has not submitted evidence of a written policy. He has also not alleged that Fahim or the unknown members of the collegial review board acted pursuant to an unofficial policy or custom. However, even if he had, the lack of causation would be fatal to Plaintiff's *Monell* claim here. The Seventh Circuit has made clear that the policy violation must cause the harm complained of. *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Plaintiff complains that he has suffered pain and that a meniscus tear has potentially gone unidentified and untreated. But Plaintiff testified that his pain was easily controlled during the relevant time period by taking ibuprofen. There is no evidence that Plaintiff has since been referred to an orthopedist and told that he needed more aggressive medical treatment in 2010. Plaintiff's medical records indicate that his condition is "chronic." Without being able to point to some harm that the alleged denial of an orthopedic consult caused him, Plaintiff has not submitted enough evidence to connect any potential unconstitutional policy or custom with his harm.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 49) is **GRANTED**. No claims remain, so the Clerk is DIRECTED to enter judgment

in Defendants' favor and to close the case.   All motions are MOOT; all settings are

CANCELLED.

      **IT IS SO ORDERED.**                                                   s/ *Michael J. Reagan*
      **DATE: February 25, 2015**                        **MICHAEL J. REAGAN**
                                                                                 Chief Judge
                                                                                 United States District Court